All rise. Before Mr. Capella, the court of the state of Illinois has reconvened. Down will K.C. Lanner, presiding. Good afternoon, you may be seated. The court is going on the record and taking up case number 4-24-0967, People v. Sarah L. Safranek. And counsel for the appellant, if you'll please state your name for the record. James Ryan Williams. And counsel for the appellate? Edward J. Murtry. Counsel for the appellant, you may proceed to argument. May it please the court. Counsel, my name is James Ryan Williams and it's my privilege to represent the state before this honorable court. Could you speak up just a tad? Thank you. This case comes before the court following the state's filing of a certificate of impairment pursuant to Supreme Court Rules 604-A1. And we're asking this court to reverse the trial court's partial denial of the state's motions in liminae 1 and 4, as they excluded evidence that's essential to proving the state's theory of a cold, calculated and premeditated murder. As an initial matter, the trial court's order in this case made this appeal significantly more difficult because of the complete and total lack of any reason or explanation for the arbitrary line that was drawn between what would and would not be admissible. Counsel, if I can interrupt you there, and you indicated it made it more difficult, but do you have any specific authority that the trial court's ruling on a motion in liminae must be construed as an, you know, I guess I'm looking for the authority that specifically says that they have to provide an explanation or a sufficient explanation as to its reasoning. I am hopeful that perhaps that will come out of this case. I mean, to be candid, Your Honor, I thoroughly researched this, and it seems like everything, and pardon my phrase, beats around the bush of state reasons on the record. You know, the order has to be, you know, clear. Any reasons given have to be supported by the record. But as far as I could find, it appears that a trial court can just make decisions without providing any reason or explanation for those decisions, which then, of course, creates the problem on appeal that we have here, where the amount of time I spent trying to just figure out how to best frame this case for the court, and what I landed on is, well, I guess the only thing that I could do is to try to assume that the trial court was persuaded by one or more of the defendant's arguments and then try to address those in turn. But, yeah, as I stated, this was an unusually difficult appeal to frame and present to the court. Because of the lack, there really wasn't much to respond. I mean, there was nothing to respond to. It just seemed like evidence was arbitrarily allowed and disallowed. I mean, frankly, it was reminding me of whenever I was in law school and I was first learning, you know, the idea of arbitrary decision-making and what that means. And I used to struggle with it, and I felt like, gosh, I mean, respectfully, of course, I feel like this case kind of represents that very thing because in so many instances, there seemed to be no real rhyme or reason for what was or was not allowed. Regarding the... Well, I'm not trying to help you, but one of the things that occurs to me is that a motion to eliminate is transitory in a sense in that it can be changed during the trial itself. But how would you ever know to ask that it be changed unless you knew why the judge kept it out to begin with? Exactly. That's yet another reason that's presented by the fact that the judge here really didn't spell any of this out or give any indication whatsoever for why things were or were not allowed. And that was another one of my thoughts is, well, I mean, seemingly any of this could be asked to be reconsidered and then maybe you could parse out some sort of explanation or understanding as to why something was or was not allowed. But with the highly incriminating Internet searches, for example, the court allowed a couple of them but disallowed the vast majority of them, all without any reason or explanation. And it's for that reason that as an additional matter, we suggest that perhaps the NOVO review is appropriate here because that's essentially what this court, with respect to the Internet searches, that's essentially what this court will be doing is looking at these anew because, again, we have no reason for why anything was excluded. And as the Supreme Court recently made clear in Morgan, whereas here the evidence is documentary in nature, the reviewing court sits in the same position as the trial court and therefore the trial court's factual findings are not entitled to any deference. And then here, of course, there was no factual findings, just random parsing of what would and would not be allowed without reason or explanation. Now, with respect to... Thank you, counsel, just for clarity because you've got two issues on appeal but you're making that reference in the argument with regards to the NOVO review as it relates only to the Google searches, correct? Yeah, I believe that that would be appropriate because, of course, the judge heard testimony. I mean, didn't give reasons but at least heard testimony so there's an exercise of discretion there. But with respect to... I mean, your honors are just looking at the very same thing, sitting in the very same position that that judge was. And in that case, it seems that the NOVO review would be most appropriate. With respect to Motion in Lemonade No. 1 regarding the Internet search history, following the victim's murder by suffocation, the police here reviewed a phone that was identified as belonging to the defendant and found numerous highly incriminating Internet searches that related to murder in the six months preceding the victim's murder. Those included things like how long investigations take, the steps in the investigation, cost of trial, child cremation, various searches relating to mental illness, as well as numerous searches regarding various different methods of committing a murder such as arsenic poisoning, voodoo doll, deadly poisoning, household cleaning, you know. And in a case involving a premeditated murder, as we have alleged here, such Internet searches are undeniably relevant to establishing the elements of intent and premeditation to kill, as well as the aggravating factors alleged, and I believe it was count five, that the murder by strimulation was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and that it was committed in a cold and calculated manner pursuant to a preconceived plan. The trial court's order only allowed a couple of these numerous searches that were related to the murder. Two, I believe it was two from the day of the murder, which were how long an investigation takes after a child passes and how much a child cremation costs, and I'm roughly paraphrasing, just to be clear, Your Honors. And then... Can we focus on that day for a moment, though, because there were three searches done that day that you at least allege in the people's motion, and two of the three were allowed, the two that you reference here, but the one that was not allowed was the OJJDP portable guides to investigating child abuse. And I guess my question is why should we find that particular search to be relevant under the standards of relevancy, and why isn't that unfairly prejudicial? I think it's relevant because it goes to her state of mind. It shows that she's looking, trying to investigate and prepare for how these things are investigated. But the standard we have to look at is that no reasonable person would take the court's view on that particular issue. And so why, when we're evaluating it under that framework, is that so unreasonable that the court said that it wasn't perhaps specific enough or it was after the fact, why is it unreasonable to have excluded that particular search? Well, so again, Your Honor, in this case, there's so many things that are, there's so many different searches that have been excluded. And perhaps maybe that wasn't quite as unreasonable as some of the other searches, such as all of the searches relating to the various methods of killing, which is frankly one of our primary concerns here. But in any event, I think that that ultimately would be relevant to her, probably her intent, or I'm not really sure on that one, Your Honor, just to be candid. But getting back on track with respect to the other searches, the defendant raised four specific arguments against admissibility. First of all, the first one was that the officer who retrieved the Internet search history wasn't a digital evidence expert. But of course, you don't have to be an expert to retrieve Internet history. Another argument was that there was no way to know whether the defendant versus somebody else actually made the searches. Now, to that end, the phone was found in the defendant's room. It used the same password as her personal phone. It was tied to her email address. And then some of the other searches that were made contemporaneous with some of the other searches, such as she was researching breastfeeding and basically drug overdose by breastfeeding, and she accessed her own Facebook account from that phone the night before the murders, all of which indicate that it was the defendant's phone. And then the defendant also argued that some of the searches were too remote in time as they spanned a six-month period. But with respect to all three of these arguments, it seems that the trial court wasn't persuaded by them because the court at least allowed some of the searches. So the court apparently thought that she was persuaded that it was her phone. And I guess that's where I would interrupt you once again, counsel, because it sounds to me when we look at those two searches, the using of the clock and Facebook on the night before, I guess when I look at this from the relevancy standpoint, I understand you're trying to establish it's her phone. But when we're really looking at the section here, how is that relevant to her intent, preparation, plan, knowledge? I guess that's where I'm specifically trying to tie that in. I understand you may want it for other purposes. But when we're talking about comparing that to how much does the cremation of a child cost, I guess I'm questioning the relevancy of those. I understand in response to counsel's suggestion it's not her phone.  And I think that would probably be the principal way that it would be used is essentially, in rebuttal, when the defense tries to raise the question as to whether or not this was her phone, that's when it becomes relevant, essentially in response to that. At that point, okay. And then, of course, the vast majority of the Internet searches that were excluded were involving the other methods of killing, which the defendant argued was not relevant because those things didn't happen. And this seems to be the most likely reason that most of the searches were excluded was because the child was not murdered by way of any of those methods. However, considering evidence that the defendant was considering these various methods is certainly relevant to establishing her motive, intent, and purpose, as well as the aggravating factors in count five that the murder was committed in a cold and calculated manner pursuant to a preconceived plan. Because it shows that we have a mom that is researching this and planning this and thinking about this for months. And it also seems relevant to corroborating the victim's disclosures of her multi-form efforts to take his life over the course of at least the six months to a year preceding his death. Now, the defendant also raised a couple of more general arguments to the Internet search history more generally that it was unfairly prejudicial, but nothing in the record seems to suggest that the judge found any of it unfairly prejudicial. And, indeed, nothing about the searches serves only to arouse juror emotions or lure the jury to declare guilt on other grounds such as sympathy, hate, contempt, or horror. To the contrary, these highly incriminating Internet searches establish, again, motive, intent, plan, and they correspond with and corroborate the victim's disclosures, again, of the multi-form abuse and the various attempts to seemingly take his life. Additionally, the defendant suggested that the searches are unfairly cumulative, but they're not at all needlessly cumulative because, really, the numerosity of them is critically important to establishing our plan and that this murder was committed in a cold, calculated, and premeditated manner pursuant to a preconceived plan. Again, the mother was researching this and considering this and thinking about this for months before it happened. And, additionally, nothing in here suggests that the court engaged in any sort of careful 403 balancing. Just using the August 5th searches, for example, the court allowed two general, and although those were six months before, so, again, it didn't seem like the court thought these were too remote in time, the court allowed two general searches about thoughts of killing one's own child, but disallowed that very same day a search of, after I had my last kid, my mental health went to shit. Now, that search seems very important for establishing her motive, i.e., why she did it. She seemed to be struggling with mental health issues. There were numerous searches related to mental health issues, and so it seems relevant to her motive. And to allow these two more general searches and not allow this critically important search just seems to be just one example that indicates that this trial judge did not appear to be engaging in any sort of meaningful balancing. Ultimately, the highly impregnated Internet searches are critically important to providing the jury a complete picture of the facts establishing the defendant's guilt, and the trial court's random parsing of what would and would not be allowed with any reason or explanation was arbitrary and unreasonable, and it unduly restricts the state's ability to present its case. And it's for that reason that we ask this court to reverse the trial court's partial denial of Motion to Eliminate No. 1. With respect, are there any further questions on Motion to Eliminate No. 1, Your Honors? I have a question with regards to the November 11, 2020, statements that involved the overdose of risperidone and then the searches with regards to breastfeeding. I guess, once again, while I'm looking at the phrasing in the statute as far as showing intent, preparation, plan, knowledge, I think those arguably could be construed, and it seemed to me, at least from your argument, maybe you were suggesting that was to show it was her phone. I guess my question is, is that being sought for any other purpose related to intent, preparation, plan, knowledge, identity, or absence of mistake or accident that was essential to establishing her guilt? In that particular search, Your Honor, she's searching about breastfeeding a 6-year-old, and potentially perhaps it can become relevant for rebutting the suggestion that these weren't her searches, these weren't her phone, or this wasn't her phone. At the same time, this seemingly could be construed as perhaps consideration of a method of killing, potentially exposing a child to drugs through breastfeeding. Are there any other questions? And then, was that argued before the trial court? I do not specifically recall, Your Honor. I tried very diligently to remember as much of this as I could, but there was a lot to go through here, so I'm very sorry. And then with regards to the statement that you just referenced, the after I had my last kid, my mental health, that particular statement, was there any other hearsay exception under which that might come in? I'm not sure, Your Honor. I'm very sorry. Generally speaking, again, with so many moving parts in this case, I would principally rely on my briefing. I am not the strongest oral advocate, and I see I'm out of time. That's just your warning light, so until the light turns red, you have a little bit of time to cover the other areas you'd like to cover. You may proceed with your argument. I'll just jump right in to the Richter factors, not talking about any specific statement generally, but honestly I think most of the Richter factors kind of apply to everything. Basically all of the statements, there didn't really seem to be any clear motive to testify falsely. The defendant can try to speculate and impute motives such as protecting one's son or wanting to adopt, but those don't seriously undermine the trustworthiness of the statements such that it warrants the total exclusion. Again, here, the paternal, if I'm saying that correctly, the paternal grandmother and the maternal aunt, they were entirely excluded from testifying regarding the various statements, despite reporting substantially similar acts of abuse that the Reyes were permitted to testify about. All these statements, all these disclosures, were based on the victim's personal knowledge. Seemingly all of them appeared to be rather spontaneous, largely in an effort to seek help. Perhaps most importantly, these allegations were very consistently repeated to numerous people, and while the defendant can nitpick the details and the nuance, they nevertheless collectively establish a pattern of abuse that corroborates the method of death and corroborates the testimony of each witness. The victim never recanted, but instead reaffirmed, and I see my time is up. Thank you. Thank you, Your Honors. Counsel, you may proceed with argument. Thank you. Your Honors, may it please the Court. Counsel. My name is Edward J. Wittrigg. I'm with the Office of the State Appellate Defender, and I represent the appellee, Ms. Sarah Safranek, on this appeal. Your Honors, in this case, a circuit court was called upon to render a very difficult decision on the admissibility of the Internet search history on a device that was located in Ms. Safranek's residence that she shared with others, and on the admissibility of MB's purported hearsay statements that he made to several other people in the years preceding his death. After balancing all of the differing and competing interests here and promising the parties that it would have an individual analysis of each different statement and search, the circuit court issued a ruling which admitted in part and denied in part the state's motions that actually allowed the state to introduce a large amount of other evidence of Ms. Safranek's bad acts before the jurors, specifically regarding to the race testimony. That decision, under the entirety of the circumstances, was not so fanciful, so arbitrary, or so unreasonable that no reasonable person could agree with it. As such, this court should affirm the circuit court's judgment on each specific entry and statement that was excluded. Addressing the Internet search history first, I do want to respond to the state's suggestion in its reply brief and here at oral argument that this court should not afford the circuit court's ruling with any deference. The state, again, provides no authority for that proposition that even if the evidentiary ruling is based on a motion in lemonade and not on witnesses presented through a motion hearing, there is no authority that I am aware of that would permit this court to review the circuit court's decision de novo. But even more importantly than that, this court traditionally affords great deference to a circuit court's application of Rule 403 balancing test. That process itself is afforded discretion given great deference by this court. I also want to quickly address the state's critique of the circuit court's judgment for not expressly providing its reasoning on the record. The state, again, provides no authority that the circuit court was required to provide every reason. I have no authority for that because most of the time judges grant motions in lemonade. They say, why? So where would the case law develop? I mean, that's my experience. I may be wrong, but my experience, how's the case law going to develop if most of the time reasons are given for motions in lemonade? And then the judge will say, now if something else comes up during trial or you make a connection with that, then I'll reconsider my motion in lemonade. But for right now, I'm keeping it out because... Yes, Your Honor. Well, the state here never requested the circuit court to provide a reasoning on the record, either before the decision was rendered, when the decision was rendered, or even after the decision was rendered to get clarification if it's wanted for the circuit court's specific reasoning. So the judge has just ruled against you, I've told you. That's it. You're going to pipe up and say, you need to give us reasons for that, Judge. That's going to make you real popular with the bench. I understand your point, Your Honor. But the state still could have asked for clarification in the following afterwards. And... And I think it's also important here that... the specific reasoning of the circuit court law would be helpful. That's not what we're reviewing here. We're reviewing whether or not there's any basis to support the circuit court's judgment based on this record. And so the focus should be whether or not the state here can meet its burden to show that reversible error occurred on this record, that is, no circuit court could exercise its discretion excluding this evidence. What if we do do a de novo review, though? I know you said there's no case law to support it, but any other basis for your position on that? On why... Excuse me, why... What if we were to do a de novo review over the Internet searches, as he had suggested, similar to the Morgan case from the Supreme Court? Well, first I would argue that that position is weighed by the state who agreed for cited abuse of discretion as the standard. And it's open and brief, I believe. Then I would also just reiterate, though, that the Rule 4.3 balancing test in particular is a process that reviewing courts have granted deference to the circuit court. The process itself, as circuit courts are trying to manage the trials and proceedings before it. But usually the balancing is exposed. Here it's not. Yes, Your Honor, there was no explicit... Once again, why would anybody comment on this when typically the judge exposes why he's keeping something out or letting something in? If I'm wrong about that, please correct me. But that's been my experience in reviewing records. Yes, Your Honor, and again, we'll just stand for that neither party asked for clarification before the circuit court, and so it did not provide any. I don't know of any requirement that it... What's the time frame over these searches? The time frame... Is it about six months? There's a reference to that one. So there are... Generally, Your Honor, there are also some searches that were undated. The state never provided a date for some of the searches, and so we don't know, quite frankly, when those were made, if they were made prior to July of 2020 or if they were made after that. And so for the dates that we are provided, they started in July 30th of 2020, and then Enby's death occurred in February of 2021. And how did these searches line up with the youngster's statements to others? As to the disclosures in the state's motion in Lemonade No. 4, this is what we're referring to. The searches occurred over a period of time. The child made statements over a period of time. I want to know how those match up. Yes, Your Honor. One problem with that is a lot of the testimony at the motion hearing wasn't particularly clear as to when the specific disclosures actually occurred. And so we can't exactly line up a specific search with a specific disclosure or anything of that nature. There were, according to the raised testimony that was going to be allowed by the circuit court, there were disclosures in the summer of 2020, but there wasn't a specific date provided to time up with a specific search. And most of these searches occurred after the raised no longer, or Cameron Bushing, had any access to, or had not access, but saw and be, I think they last saw them in early fall of 2020. So many of the searches from November into December wouldn't time up with the disclosures necessarily. While there's a lack of specificity, if we lined up these searches and when we think they occurred, approximately, and we lined up that with the child's comments in which he was predicting his death, do they overlay one another, or are they wildly disparate? I guess that would probably be relative. I think that there are, again, I would think most of these searches occurred after the disclosures to the raised, and they certainly occurred after the disclosure, I would believe, to Cameron Bushing. And the disclosures to Rhonda Burton, the timeline was very confusing, and I think that most of the disclosures happened after some of these searches. And so I think it's difficult to come up with a concrete timeline for that. Counselor, if I may direct your attention to the November 1st, 20, or I'm sorry, the August 5th, rather, 2020 statement that I was discussing with counsel as we, as you stated, we give the trial court discretion under the standard of review that's been argued, but in this case, on the same day, two statements are permitted and the other statements are not permitted. So what rational basis is there for the court concluding that two are appropriate from that same day when, if we look at each statement, at least three of them contain reference to her own thoughts and then describing her own mental health? And you're referring particularly to the August 5th search of does having scary thoughts mean you'll act on them after my last kid? And then the other ones that were omitted, I believe, where I've had thoughts about killing my kid, thoughts about killing my children, anyone else have them? Does having scary thoughts mean you'll act on them? And then the statement about her own mental health. And, Your Honor, I guess my point for why a circuit court could exclude, potentially exclude these first of all... Some but not all. What? He allowed some but did not permit all. Yes, Your Honors, yeah. I think a line could be drawn with the thoughts about the first two searches actually relating to the circumstances that were emulated here, allegedly, or at least as alleged by the state. And then I think the court could find less probative value for the remaining thoughts of after I had my last kid, and then complaining about mental health. Well, I believe NB at that point was six, and so it's not necessarily that it was referencing to her current mental health at that point. And I would think that a circuit court could exclude that does having scary thoughts mean you'll act on them as not sufficiently tied to the specific circumstances that happened here under this court's decision in payload that was argued to the circuit court by the parties and argued again here on appeal. And if I can transition then to the statements to refer to Rhonda and Emma that appear to be about drowning and suffocation incidents that the court did not permit. I guess my question is why aren't those statements, if they're based on NB's own experiences, then why aren't those statements more probative on that point for which they're offered than any other evidence which the proponent can produce? Well, Your Honor, I think for the majority of... I don't think I can test at that point for Cameron Bushing's statements whether... I'm speaking about Rhonda and the statements that were excluded from Rhonda and Emma only. Yeah, okay. And for Rhonda, I think that there are, at least for a few of the statements, there is a potential argument that I made that Brian Burton was present, apparently present in some of those circumstances. Not all the statements, to be clear, and only a few of them. So I think he would probably be the... that the state should provide either his testimony or explain why, if he witnessed the event, provide his testimony or explain why he would not be able to testify about that to meet the statutory requirements. So you're saying they're not relevant because Brian was present when those statements were made? I'm not following you. Thank you for letting me clarify. Okay, one of the requirements of the statute is... is that the statement is more probative on point for which it is offered than any other evidence which a proponent can procure through reasonable efforts. And I guess I was responding to that rather than the first point. The second point being that, well, if Mr. Burton can test... if he was present for those underlying incidences, he could be the one to testify. And so this hearsay is not the most probative evidence on point for that specific... Is he available to you? Is he available to the defense? As far as I know, he could be available to either party to call to testify. Well, then... And he could say, I don't remember any of those conversations. I would argue that that... or I am arguing, excuse me, that that is a statutory requirement that the proponent of this evidence must meet. And that is a reasonable basis looking at a circuit court's decision in which they could exclude at least some of those statements. Didn't the witnesses testify that he had indicated that he did not recall those events? Ronda's testimony, I think, I cited in the response brief, was confusing on that point. It seemed to suggest at one time that he was present and a little bit at other times he denied it. And the circuit court need not interpret all of the evidence here in the light most favorable to the state. And so it could hold that potential discrepancy against her. And so I guess I'll... unless there's any more questions on the motion limiting number one concerning the other Badax evidence, I'm going to move on to discussing in more detail some of these statements. As it relates to Cameron Bushing's testimony, or as this court referred to him as, as Emma Bushing, there were two main disclosures. One relating to putting a pillow over Enby's head, where he said that Ms. Safranek was mean to him and hated him because she had four miscarriages. And then there was a second statement that related to an attempted drowning in a bathtub. The pillow disclosure was undermined by the fact here that Cameron did testify to those corroborating details that are listed in the motion in Lemone that how he talked about being scared of her or hating him because of the miscarriages. Not only that, she could not tell when the underlying incident occurred. She could not recall with any specificity of when the disclosure actually occurred, except for that it was some point before the summer of 2020. But even more importantly than that, she wasn't actually present for when the disclosure was first made in that household. It was actually made to her mother instead of her. And so she didn't actually know the circumstances under which that disclosure was first made, if it was in a highly suggestive way or, contrary, if it was free from any coercion at all, because quite simply she wasn't there when that disclosure was first made. And so then even if it was later repeated to her, she would still not be able to determine if it was consistent with that first disclosure, because, again, she was not present for the initial disclosure. As to the bathtub disclosure... Let me ask you this, though. The disclosure, though, is similar to the other two, you know, witnesses that he made disclosures to. So why is it relevant whether or not she was present when the initial disclosure was made? Because he did make it to her. I'm going to argue, or push back a little bit on that, and as I lay out in the response brief, I think the disclosures to Rhonda Bruton were referring to a different series of events or a different timeline, so I don't think it's... No, I agree with you, but they were still... Mom tried to drown me in the bathtub, or Mom tried to suffocate me with a pillow. Those were all consistent through all three. Would you agree? Generally, yes. Okay. But even if the circuit court... The circuit court still complied with Rule 403 here, and it must under the statutes, that by already allowing in testimony of these underlying and these disclosures from 2018, from 2020, and it is a numerous ballpoints of different incidents they're allowed to testify to, the court, even if it found that there wouldn't be sufficient reliability for one of these disclosures to Rhonda Bruton or Emma Bushing, to be made, it could still find it unduly cumulative under Rule 403 balancing test. How is it unduly cumulative? Argue that to me. Yes, Your Honor. The circuit court is already allowing not only numerous statements that was made to the ladies into this trial, the defense is even also is not allowed to question the potential existence of some of those underlying disclosures due to its ruling on the potential videos that were conditionally excluded. And so the state already is going to spend a significant amount of this trial discussing events that are related to 2018, forcing Ms. Suffernick to defend against events that happened in 2020. And the court could set an outer limit here of allowing the race to testify and finding that sufficient and not on this specific aspect. But wouldn't that be key to showing the consistency in her searches going back to what was at count five with the intent, the plan, the scheme? Yes, Your Honor. I'm arguing again that it wouldn't because not only do you have arguments to... Not only do you have these disclosures to Rebecca Wright, it's also being allowed the same disclosures to Daniel Wright being allowed to testify as well. And so allowing then a third witness to testify or a fourth witness to testify about these disclosures, I think the court could find that that would become a mini-trial on what happened in the years before the 2021 incident that's at issue here. Thank you, Your Honor, for your time. I really appreciate it. Thank you. Counsel, Rebecca? Thank you, Your Honor. I want to ask you the same question that I asked counsel. Can you overlay the internet searches with the child's statements to others about what was happening to him? Yes, Your Honor. So to be candid with you, while I was trying to organize all this because it was rather a mess, a pattern that I noticed that I believe I referenced in my opening brief was that at least with respect to some of the internet searches and in the relative times of some of the disclosures, out of that came a suggestion that, because just for the sake of argument, taking as true these disclosures of an attempted drowning or an attempted suffocation, it was as if she was having difficulty committing the murder in that particular way and then would resort to researching perhaps easier, physically easier ways of achieving the same result. And there does seem to be a pattern, like I said, whatever I laid out in my notes. In fact, I noticed a pattern almost accidentally when I had two pieces of paper next to each other, but that seemed to be a pattern that was emerging. So... You've told me about a pattern, but you're adding things on top of it. My question, I think, is much simpler. Did the searches occur at or about the same time the child was reporting or, as I would think it, predicting his own death? Yeah, they were. Yes, some of them were. Some of them were. I'm not asking what... Some of them were. I believe, in particular, towards the end of the summer of 2020, some of the early searches, like August and July, are contemporaneous with the late summer disclosures, I believe, of the attempted drowning. Even though there may be a difficulty in determining when the disclosure occurs, but the child may have been talking about recently or he might have been talking about months before. Well, to that end, you're... I mean, is that possible? It's certainly possible. And just as I conceded in my reply brief, it might be the case that there were multiple different drowning attempts. Some of that's not clear. But... But it... But it's certainly possible that the... It's certainly possible that the child was reporting these things contemporaneous with the early searches.  You've answered my question, so... Yeah, and then... Anyhow. One thing I needed to clarify, because your honors might not be aware, that I was recently made aware, so one of the forms of relief I alternatively requested in this was remand for clarification of some of these reasons. But I was recently advised that the trial judge here has recently retired. So I just thought I should bring that to your attention because I'm not even really sure what that could possibly look like in that sort of circumstance. What's your position on the fact that the videos that... You know, the video of NB making those disclosures, that it's not done by, like, a trained professional? You know, this is just... She turned on the cell phone and starts recording it. What effect, if any, should that have on our decision-making that it wasn't done, you know, like, by a trained professional who's interviewing a child who may have been abused or something? Does that make a difference? Well, I think, to that end, what's really important is to note that in both the videos, you could tell that the person making the video was at least trying to make sure the child wasn't aware of it, you know, to maybe produce a more organic, you know, disclosure. I mean, I understand your concern there, but at the same time, when you review the videos, they just seem very trustworthy. And that's why I think it's critically important that the jury get to see the child describing this abuse in his own words, and, as Your Honor said, almost effectively predicting his own death. And... Oh, my time is up. I believe that does conclude your time. All right. Thank you for your time, Your Honors. Thank you. Thank you for your time. We will take this matter under advisement, and the court stands at recess.